# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DENNYS RODRIGUEZ,

        Movant,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C23-4032-LTS
(Crim. No. CR21-4046-LTS)

**MEMORANDUM**
**OPINION AND ORDER**

This matter is before me on Dennys Rodriguez's pro se motion (Doc. 1) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255 and pro se supplement (Doc. 3) to his motion. Rodriguez's prior attorney filed a court-directed response (Doc. 7) and the Government filed a resistance (Doc. 10) to Rodriguez's motion. Rodriguez also filed a pro se reply (Doc. 11).

## I. BACKGROUND

On May 26, 2021, Rodriguez was charged in a one-count indictment (Crim. Doc. 5) with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A). Pursuant to a plea agreement, he pleaded guilty on December 7, 2021, and I accepted that plea on December 22, 2021. Crim. Docs. 146, 148, 153. The plea agreement stipulated that the appropriate base offense level was at least 38 based on Rodriguez's involvement with at least 4.5 kilograms of actual methamphetamine. Crim Doc. 148 at 7, ¶ 19A. The plea agreement also contains an appeal waiver. *Id*. at 15-16, ¶ 44.

The statutory minimum term of incarceration was 120 months and the statutory maximum was life. Crim. Doc. 189 at 23. The presentence investigation report (PSR)

assigned a base offense level of 38, added two levels under U.S.S.G. § 2D1.1(b)(1) because Rodriguez possessed a dangerous weapon, added two levels under U.S.S.G. § 2D1.1(b)(5) for importing methamphetamine and subtracted three levels for acceptance of responsibility. Crim. Doc. 189 at 10. Along with the resulting total offense level of 39, the PSR found a criminal history category of IV, resulting in a guideline range of 360 months to life.[1] *Id*. at 11, 14, 23. Rodriguez objected to the two-level increase under § 2D1.1(b)(5), arguing that he was not involved in the importation for the methamphetamine, but that objection was withdrawn. *Id*. at 10; Crim. Docs. 175, 208.

On April 27, 2022, I sentenced Rodriguez to 176 months' imprisonment and five years of supervised release, with the judgment being filed April 28, 2022. Crim. Docs. 208, 210. In arriving at that sentence, I granted Rodriguez's motion for a downward variance pursuant to my policy disagreement with the actual methamphetamine

---

[1] On November 21, 2023, the United States Sentencing Commission enacted several amendments to the guidelines. Relevant to this case, Amendment 821 amends § 4A1.1(d), the so-called status points provision that added criminal history points when a defendant committed the charged offense while under a criminal justice sentence. Section 4A1.1(d) added "2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Amendment 821 deleted subsection (d) and redesignated it as subsection (e). The new subsection provides: "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." In amending § 4A1.1(d), the Commission considered research suggesting that status points "improve[d] the predictive value of the criminal history score less than the original Commission may have expected . . . ." Amendment 821 (Supplement to Appendix C (Nov. 1, 2023)). The Commission subsequently voted to apply Amendment 821 retroactively. *See* 28 U.S.C. §§ 994(o), 994(u). Rodriguez received two points pursuant to §4A1.1(d). Crim Doc. 189 at 14. Applying Amendment 821 retroactively, Rodriguez would now be a criminal history category III with a range of 324 to 405 months' incarceration. However, while Amendment 821 did lower Rodriquez's applicable guideline range, he received a variance that resulted in a sentence that was less than the minimum of the new guideline range. Pursuant to U.S.S.G. §1B1.10(b)(2)(A), except as provided in U.S.S.G. §1B1.10(b)(2)(B), a court shall not reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and U.S.S.G. §1B1.10 to a term that is less than the minimum of the amended guideline range. Thus, Rodriguez did not and cannot receive a sentence reduction pursuant to Amendment 821.

guidelines, as set out in *United States v. Harry*, 313 F. Supp. 3d 969, 974 (N.D. Iowa 2018). Crim. Doc. 208. Rodriguez did not appeal.

Rodriguez mailed his § 2255 motion (Doc. 1) on May 3, 2023, and the court received it on May 8, 2023. He filed a supplement (Doc. 3) on June 26, 2023. Doc. 3. On February 26, 2025 I entered an order (Doc. 5) pursuant to Rule 4 of the Rules Governing 28 U.S.C. § 2255 Cases in which I found that the motion was timely,[2] allowed the ineffective assistance claim to proceed and directed responses from Rodriguez's prior counsel and the Government. On March 28, 2025, Rodriguez's prior counsel, Jim McGough, filed a response (Doc. 7) to Rodriguez's claims. The Government filed a resistance (Doc. 10) to the § 2255 motion on May 20, 2025.

The matter is now fully submitted. I find that an evidentiary hearing is not necessary except as to Subpart 3 of Claim 2. All other claims are denied for the reasons set out below.

## II. LEGAL STANDARDS

### A. Section 2255 Standards

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

---

[2] The supplement (Doc. 3) was not timely filed. However, because the claims set forth in the supplement arise from the same set of operative facts as those in the original motion, the supplement relates back to the date of the original motion and is deemed timely. *See Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003).

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013). "The district court is not permitted to make a credibility determination on the affidavits alone[.]" *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioner's without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions

4

upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

## B.     *Ineffective Assistance of Counsel Standards*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is, conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. When evaluating ineffective assistance claims, a court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" to which a criminal defendant is entitled. *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (citation omitted). Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable,"

5

likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Because a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

## III.  DISCUSSION

Rodriguez asserts two umbrella claims of ineffective assistance of counsel with several subparts as follows:   In Claim 1 he alleges ineffective assistance of counsel at the pretrial stage by failure to: (1) "Inform Rodriguez of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial"; (2) "File any substantive pretrial motions"; (3) "Conduct an adequate and independent pretrial investigation"; and (4) "Attempt to negotiate a favorable [p]lea [a]greement."  Doc. 1 at 5.  Claim 2 alleges ineffective assistance of counsel at the sentencing and post-sentencing stages though failure to: (1) "Properly discuss and explain the PSR to Rodriguez prior to the sentencing hearing"; (2) "File substantive objections to the PSR"; and (3) "File a [n]otice of [a]ppeal."  *Id.* at 6.  I will address each prong of each claim separately.

***A.***     ***Claim 1 – Pretrial Allegations***

      ***1.***     ***Failure to Advise of the Consequences of Pleading Guilty***

Rodriguez asserts that McGough failed to advise and adequately communicate to him the potential outcomes of proceeding to trial and instead persuaded him to accept the Government's plea offer. Doc. 3 at 21-22. He claims he was not given sufficient information to make an informed decision about whether to accept or reject the plea offer and pleaded guilty only as a result of pressure from McGough. *Id*.

McGough states in his affidavit that he explained the available options in resolving the case with Rodriguez on two occasions, being sure to answer all of his questions before concluding a meeting. Doc. 7 at 1-2. He further asserts that after gaining additional information about the resolution of the case from a conversation with the Government, he shared that information with Rodriguez, to which Rodriguez instructed him to pursue a plea agreement. *Id*. at 2. McGough represents that he met with Rodriguez to review and discuss the plea agreement, discussed other possible ways to proceed, answered all questions and additionally reviewed discovery. *Id*.

Given the substantial amount of evidence against Rodriguez, the Government asserts that entering a guilty plea was a "wise choice." Doc. 10 at 8-9. The Government further states that McGough's contention that he reviewed the discovery materials and discussed available options with Rodriguez is corroborated by the fact that Rodriguez initialed each paragraph of the plea agreement, reflecting his understanding and acknowledgment of its contents. *Id*. at 9. Additionally, the Government notes that the absence of any questions by Rodriguez during the plea hearing indicates that he was adequately informed and entered a voluntary plea. *Id*.

The well-established standard "for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Tran v. Lockhart,* 849 F.2d 1064, 1067 (8th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Although a guilty plea taken in open court is not immune to collateral attack in § 2255 proceedings,

7

"the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). Conclusory allegations unsupported by particularized facts are "subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allision*, 431 U.S. 63, 74 (1977); *see also United States v. Abdullah*, 947 F.2d 306, 312 (8th Cir. 1991) (rejecting an assertion that a guilty plea was the product of counsel's pressure on defendant to accept a plea deal when the defendant affirmatively stated during the plea colloquy that "he was completely satisfied with the performance of his counsel and never indicated in any manner that he was under pressure from counsel to plead guilty").

To satisfy the prejudice prong, "the convicted defendant must demonstrate that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)); *see also Tran*, 849 F.2d at 1067 (A petitioner must provide the court "with the type of specific facts which would allow … an intelligent assessment of the likelihood that [a petitioner] would not have ple[ ]d guilty.").

Rodriguez has shown neither deficient performance nor prejudice on this claim. The record indicates that McGough advised Rodriguez on multiple occasions of his various options in resolving his case. The plea agreement contains the following provision, which Rodriguez initialed:

> Defendant acknowledges defendant has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with defendant's attorney. Defendant understands that, by entering a plea of guilty, defendant will be giving up the right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in defendant's defense; to

8

remain silent and refuse to be a witness by asserting defendant's privilege against self-incrimination; and to be presumed innocent until proven guilty beyond a reasonable doubt. Defendant agrees defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation. Defendant states defendant is not now on or under the influence of, any drug, medication, liquor, or other substance, whether prescribed by a physician or not, that would impair defendant's ability to fully understand the terms and conditions of this plea agreement.

Crim. Doc. 148 at 16, ¶ 45. Moreover, during the change of plea hearing, the court had the following discussion with Rodriguez, while he was under oath:

> THE COURT: Mr. Rodriguez, did you get a chance to read this and review it carefully with your lawyer prior to today?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: Was he able to answer any questions you might have had about the plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Based on your review and your discussions with your lawyer, do you believe you understand all of the terms of the plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And are these your initials before paragraphs in the plea agreement and also your signature above your name at the end?
>
> THE DEFENDANT: Yes, they are, Your Honor.
>
> THE COURT: Did you sign and initial it only after you'd fully reviewed it with your lawyer?
>
> THE DEFENDANT: Yes, I did, Your Honor.

Crim Doc. 253 at 15.

Also at the hearing, Rodriguez confirmed that his plea was made knowingly and voluntary:

> THE COURT: Mr. Rodriguez, has anybody forced or pressured you in any way to plead guilty here today?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anybody promised you for sure what your sentence will be or that you'll receive a sentence of less than ten years?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anybody made any other promise -- or any type of promise other than the plea agreement promises by the government to get you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: And has anyone made any type of threat to get you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.

*Id*. The record, including Rodriguez's sworn testimony, clearly contradicts Rodriguez's conclusory allegations that he was unaware of the consequences of his plea or that it was entered involuntary. His admissions undermine any claim of deficient performance by counsel and fail to satisfy the standards set forth in *Strickland*.

Even assuming deficient performance, Rodriguez offers no evidence that but for counsel's deficient performance he would have declined the plea offer and proceeded to trial. Rodriguez does not even make a conclusory allegation – let alone offer objective evidence – that he would that have proceeded to trial. *See United States v. Frausto*, 754 F.3d 640, 644 (8th Cir. 2014) (a petitioner's "bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that [they] would not have pled guilty and is far too speculative to warrant § 2255 relief.")

10

Because Rodriguez has failed to demonstrate either deficient performance or prejudice, Subpart 1 of Claim 1 is denied.

### 2.    *Failure to File Substantive Pretrial Motions*

Rodriguez asserts that McGough was ineffective by failing to file any substantive pretrial motions challenging the strength of the Government's case.  Doc. 3 at 22.  He insinuates that the failure to file a Fourth Amendment challenge to the sufficiency of the drug weight calculations amounted to a lack of strategic advocacy, which in turn impaired his ability to make an informed decision of whether to plead guilty.  *Id.* at 23-24. Rodriguez alleges that if McGough would have challenged the correctness of the drug weight, he may have opted to proceed to trial.  *Id.* at 24.

McGough responds that he discussed options in resolving the case with Rodriguez. Doc. 7 at 2-4.  He indicates that he never received any complaints from Rodriguez regarding how the case proceeded.  *Id.* at 4.  McGough further notes that there was no need for an independent investigation, as Rodriguez expressed his desire to resolve the case shortly after being appointed counsel.  *Id.*

The Government argues that given the amount of evidence it gathered against Rodriguez, it is unlikely that any pretrial motions would have succeeded.  Doc. 10 at 9. The Government additionally asserts that Rodriguez's Fourth Amendment claim rests solely on unsubstantiated and conclusory assertions, without any supporting evidence or facts.  *Id.* at 9-10.  It maintains that McGough was not deficient in failing to pursue a meritless motion.  *Id.*

Generally, § 2255 claims involving trial strategy are left to the discretion of counsel and are "virtually unchallengeable."  *Loefer*, 604 F.3d at 1030 (quoting *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006)).  A court's scrutiny of counsel's performance is "highly deferential," does not "second-guess strategic decisions or exploit the benefits of hindsight," and presumes that counsel's conduct "falls within the wide range of reasonable professional assistance."  *Osborne v. Purkett,* 411 F.3d 911, 918

11

(8th Cir. 2005). Additionally, it is a longstanding rule that counsel cannot be ineffective for failing to raise a challenge that would not have otherwise succeeded. *See United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983).

Rodriguez fails to overcome the strong presumption that McGough's conduct fell within the wide range of reasonable professional assistance. He made the strategic decision to not file a motion to suppress or challenge the drug weight measurements. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" unless the "strategic choices 'result[ed] from lack of diligence in preparation and investigation.'" *United States v. Johnson*, No. 8:19CR87, 2025 WL 289214, at *3 (D. Neb. Jan. 24, 2025) (rejecting ineffective assistance claim based on counsel's decision not to file a motion to suppress because "it shows, at best, disagreement with a strategic choice made by trial counsel"). Moreover, Rodriguez fails to provide any basis to dispute the accuracy of the drug weight as determined by the laboratory. *See Chavez v. United States*, 2:19-cv-04059, 2019 WL 7906259, at *4 (W.D. Mo. Sept. 18, 2019) (counsel was not ineffective in failing to challenge the methamphetamine purity in the PSR as the record contains no indication that the laboratory analysis was inaccurate, and movant provides no evidence disputing its reliability).

Noting in the record that suggests an issue with the drug quantity measurements. Rodriguez offers only conclusory assertions disputing the quantities attributed to him at sentencing, which do not suffice to overcome the strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. Rodriguez's bare allegations of counsel failing to file a motion to challenge the measurements, lacking even speculation as to what error occurred or how such an error would have influenced his plea decision, is insufficient to establish deficient performance.

Nor can Rodriguez establish a reasonable probability of a different outcome even had McGough opted to challenge the drug weight measurements. When a defendant's claim of ineffectiveness stems from counsel's failure to litigate a Fourth Amendment

12

issue, the defendant must demonstrate that his Fourth Amendment claim is meritorious and that there is a reasonable probability of a different outcome in order to establish actual prejudice. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Even if McGough had challenged the accuracy of the drug weight, the reported measurements would have to be substantially inaccurate to affect his base offense level and sentencing calculation. The converted drug weight set forth in the PSR, which was based in part on laboratory measurements, was 137,776.40 kilograms. Crim Doc. 189 at 10. This is more than 47 kilograms (or 103 pounds) above the threshold to establish a base offense level of 38. *See* U.S.S.G. 2D1.1(c)(1); *see also Johnson v. United States*, No. 1:22-CV-00150-SNLJ, 2024 WL 4381167, at *7 (E.D. Mo. Oct. 3, 2024) (movant presented no evidence to suggest that the crime lab's drug weight determination was inaccurate, and in any event, the measurement error would have to be significant to affect the applicable base offense level). Given the improbability that the measured drug weight could have been so significantly erroneous as to impact the base offense level, there is no reasonable probability that failing to challenge the drug weight could have impacted Rodriguez's plea decision.

Because Rodriguez has failed to demonstrate either deficient performance or prejudice, Subpart 2 of Claim 1 is denied.

### 3. *Failure to Conduct an Adequate Pretrial Investigation*

Rodriguez asserts that McGough failed to conduct a pretrial investigation. Doc. 3 at 25. Specifically, he alleges that McGough did not research case law, investigate facts, interview witnesses, or move the court for a private investigator, and that he merely examined and discussed the case file with the Government. *Id*. at 25-26. Rodriguez states that "[b]ecause of the lack of diligence and assistance from McGough, [he] was unable to obtain the findings that he needed to be fully informed so that he could make an informed decision whether to plead guilty or proceed to trial." *Id*. at 27. He further maintains that had McGough investigated the Government's case and been informed of

13

the findings, "there is a reasonable probability that he would have opted to proceed to trial." *Id.*

McGough states that there was no need for an independent investigation of Rodriguez's case, as "shortly after [he] got involved Mr. Rodriguez expressed how he wished to resolve the case and [he] took all reasonable steps to accomplish that goal." Doc. 7 at 4. McGough indicates that after reviewing discovery and discussing the various options in resolving the case with Rodriguez, Rodriguez maintained his desire to pursue the plea agreement. *Id.* at 2.

As the Government points out, Rodriguez fails to explain how hiring a private investigator could have altered the balance of the evidence, particularly given that the presentence report attributes much of the methamphetamine quantity to controlled transactions and quantities recovered in executing a search at his own residence. Doc. 10 at 10. Moreover, the Government asserts that Rodriguez has not demonstrated that he was prejudiced by McGough's alleged failure to conduct an independent investigation. *Id.* at 11. Rodriguez's reliance on speculative allegations, the Government contends, does not meet the burden required to establish ineffective assistance of counsel. *Id.*

Generally, "[t]rial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary." *Kemp v. Kelley*, 924 F.3d 489, 500 (8th Cir. 2019). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). However, "'strategic choices made after less than complete investigation are reasonable' precisely to the extent that 'reasonable professional judgments support the limitations on investigation.'" *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Strickland*, 466 U.S. at 690-91).

Here, Rodriguez advances a conclusory claim that McGough should have done more to investigate the merits of his case. A court's assessment of counsel's decision to

14

investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. I agree with the Government that Rodriguez has failed to establish that McGough acted unreasonably. Rodriguez's allegations are contradicted by the record, which reflects the overwhelming evidence against him and his own admissions. *See United States v. Leyva-Reynoso*, No. 4:18-CR-3121, 2021 WL 5203346, at *3 (D. Neb. Nov. 9, 2021) (movant's complaints regarding counsel's failure to conduct a pretrial investigation or move for a private investigator were defeated by movant's admissions confirming her involvement in the sale of methamphetamine). According to McGough, Rodriguez expressed his clear desire to pursue a plea agreement with the Government after being informed of his available options of resolving his case. Given Rodriguez's desire to pursue a plea agreement, the overwhelming evidence against him and the fact that Rodriguez fails to articulate any potential, discoverable evidence, McGough was not deficient and acted reasonably in not conducting additional pretrial investigation.

Additionally, Rodriguez presents no credible, nonconclusory evidence of a different outcome had McGough conducted further pretrial investigation. When an ineffective assistance of counsel claim is premised on an alleged failure to investigate, "a defendant can establish prejudice by showing that the discovery of evidence would have caused counsel to change his recommendation as to the plea offer." *Witherspoon v. Purkett*, 210 F.3d 901, 903 (2000). Rodriguez makes no such showing. He offers only speculation that further investigation may have altered his decision and, as noted above, fails to identify any uncovered material that could have weakened the Government's (strong) case or prompted McGough to alter his plea recommendation.

Because Rodriguez has shown neither deficient performance nor prejudice, Subpart 3 of Claim 1 is denied.

#### 4.  *Failure to Attempt to Negotiate a Favorable Plea Agreement*

Rodriguez alleges that the plea agreement was skewed in the Government's favor and was of no benefit to him.  Doc. 3 at 31.  He contends that he did not fully understand the consequences of pleading guilty due to McGough's deficient performance and, as a result, received an unfavorable sentence.  *Id*. at 31-32.  In his reply, Rodriguez suggests a more favorable plea agreement was possible, specifically through the pursuit of an offense level cap or waiver of enhancements that would have mitigated his sentencing exposure.  Doc. 11 at 5.  Rodriguez asserts that if McGough would have negotiated a favorable plea agreement, or advised him of the agreement's implications, he would have rejected the agreement and proceeded to trial or entered an open plea to preserve his right to appeal.  Doc. 3 at 31-32.

McGough states in his affidavit that he explained to Rodriguez on more than one occasion that "he could proceed to trial, enter a plea without an agreement or take steps to enter into an agreement with the Government" and that during those conversations he was sure to answer all of Rodriguez's questions.  Doc. 7 at 1-2.  McGough also states that when he spoke with counsel for the Government, he was informed that the Government had not filed a sentencing enhancement under 21 U.S.C. § 851.  *Id*. at 2.  He states that he relayed this information to Rodriguez, who then instructed him to pursue a plea agreement.  *Id*.  McGough asserts that he reviewed the plea agreement and discovery with Rodriguez and discussed alternative options for resolving the case, including how the sentencing guidelines would likely apply to Rodriguez.  *Id*.  According to McGough, there were no indication at the change of plea hearing that Rodriguez had changed his desire to plead guilty or struggled to understand the proceeding.  *Id*. at 3.

The Government asserts that McGough's performance during negotiations were reasonable and that Rodriguez has not demonstrated prejudice from any alleged shortcomings.  Doc. 10 at 12.  It emphasizes that this was a case with overwhelming evidence and that entering into a plea agreement was a strategic course of action that ultimately resulted in Rodriguez receiving a sentence below the advisory guideline range.

16

*Id.* The Government further asserts Rodriguez has not established that if McGough had "requested a more favorable plea agreement, that one would be offered." *Id.* at 12-13. To the contrary, the Government asserts that McGough secured the best possible agreement.

Defendants have a Sixth Amendment right to counsel that includes adequate legal assistance during the plea-bargaining process. *See Lafler*, 566 U.S. at 162. "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 168. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To establish prejudice, a defendant must show that the outcome of the plea process would have been different had he been represented by competent counsel. *Id.*

Rodriguez fails to overcome the strong presumption that McGough's conduct fell within the wide range of reasonable professional assistance. His assertion that McGough should have negotiated a more favorable plea agreement is unsupported by the record. The Government possessed overwhelming evidence linking Rodriguez to the indicted crimes and Rodriguez knowingly signed the plea agreement after reviewing it with counsel. He ultimately received a sentence below the guideline range. Rodriguez cannot demonstrate deficient performance in McGough's recommendation to accept the plea proposal.

Nor can Rodriguez establish he was prejudiced by any alleged failures. Nothing in the record indicates Rodriguez would have received a more advantageous plea agreement, even if McGough had requested one. *See Leyva-Reynoso*, 2021 WL 5203346 at *4 (counsel is not ineffective merely because a defendant asserts that a more favorable plea agreement should have been negotiated, particularly where there is no indication that a more favorable agreement would be offered). Any claim of prejudice is purely conclusory and speculative.

17

Because Rodriguez has shown neither deficient performance nor prejudice, Subpart 4 of Claim 1 is denied. Claim 1 will therefore be denied in its entirety.

**B.      Claim 2 – Sentencing and Post-Sentencing Allegations**

**1.      Failure to Explain the PSR Before the Sentencing Hearing**

Rodriguez alleges that McGough neglected to review the PSR and explain its legal effect with him before sentencing. Doc. 11 at 6. He asserts that McGough's superficial review of the PSR does not satisfy counsel's "constitutional obligation to provide meaningful, substantive guidance." *Id*. Rodriguez attributes his confusion regarding possible objections to changes in the statutory sentencing range and drug quantity assessment to McGough's failure to adequately inform him of the implications of the PSR. *Id*.

McGough states that he was telephonically present for Rodriguez's PSR interview and subsequently held a conference with Rodriguez to thoroughly review each paragraph of the PSR. Doc. 7 at 3. He asserts he discussed any potential objections with Rodriguez and provided him with articles to help prepare for the sentencing hearing. *Id*. McGough maintains that the final PSR was mailed to and reviewed with Rodriguez prior to the sentencing hearing. *Id*.

The Government argues the record refutes Rodriguez's claim that McGough failed to explain and discuss the PSR prior to the sentencing hearing. Doc. 10 at 13. It relies on McGough's affidavit as evidence to the contrary. *Id*.

A § 2255 motion may be denied without a hearing if "the allegations cannot be accepted as true because they are contradicted by the record." *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). A defendant must also establish prejudice in "that the results of the sentencing hearing would have been different absent ... counsel's alleged error." *United States v. Vargas*, 469 F. Supp. 2d 752, 776 (D.N.D. 2007). I agree with the Government that Rodriguez has not established ineffective assistance of counsel. The

record – including McGough's affidavit and statements at the sentencing hearing – undermine Rodriguez's claim that McGough failed to review and explain the PSR with him.  Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure requires that a court verify that the defendant and counsel have read and discussed the PSR:

> THE COURT: Mr. McGough, did you have a full and complete opportunity to go through the presentence report with your client?
>
> MR. MCGOUGH: I did, Your Honor.

Crim Doc. 255 at 2.  *See Vargas*, 469 F. Supp at 776 (Defendant's claim that his attorney failed to review the PSR with him is squarely contradicted by the sentencing record, to which counsel acknowledged he has reviewed the report and made corrections with defendant prior to the sentencing hearing).  McGough's affidavit also demonstrates that he discussed the PSR with Rodriguez on multiple occasions.[3]  Given the record as a whole, I find that counsel's performance was objectively reasonable.

Even assuming deficient performance, Rodriguez has not established prejudice.  The sentencing record reflects that he was aware of the PSR's findings and did not express any confusion or surprise about its contents.  Without any indication that an alleged lack of sufficient discussion affected his understanding of the sentencing process or PSR, Rodriguez cannot show that additional discussion with McGough would have changed the result of the sentencing hearing in any meaningful way.  *See United States v. Billie*, No. 4:05-CR-012, 2008 WL 4346437 at *7 (D.N.D. Sept. 17, 2008) (defendant failed to articulate how his sentence would have been different if he and his counsel had conducted an in-depth review of the PSR prior to sentencing and therefore could not show prejudice).

Because Rodriguez has shown neither deficient performance nor prejudice, Subpart 1 of Claim 2 is denied.

---

[3] As will be discussed further, *infra*, McGough asserted numerous factual and legal objections to the draft PSR.  Crim. Doc. 175.  This further refutes Rodriguez's claim that McGough failed to review the PSR with him.

### 2.       *Failure to File Substantive Objections to the PSR*

Although his case did not involve crack cocaine, Rodriguez argues that McGough was deficient in not objecting to the PSR regarding the change in statutory penalties for crack cocaine offenses under 21 U.S.C. § 841. Doc. 3 at 33-34. As applicable to his case, the Fair Sentencing Act, the applicable statutory range for an offense involving 50 grams or more of actual methamphetamine was reduced from a statutory penalty of 10 years to life to a penalty of 5 to 40 years. *Id*. at 35-36. Rodriguez argues he should have been sentenced accordingly, notwithstanding any enhancements. *Id*.

Rodriguez further asserts that McGough was deficient in not objecting to the calculated drug weight in the PSR. *Id*. at 36-37. He argues that the calculated drug weight is an element of his offense and any fact that increases the statutory sentencing range must be submitted to a jury and proven beyond a reasonable doubt. *Id*. Because he was indicted for involvement with at least 50 grams, but less than 150 grams of methamphetamine (actual), and held accountable for 137,776.40 kilograms of converted drug weight at sentencing, Rodriguez asserts that the additional quantity should not have been used to increase his sentencing exposure without a jury finding. *Id*. at 38-39. He maintains that under the 2018 Sentencing Guidelines, a base offense level of 30 applies to offenses involving at least 50 grams, but less than 150 grams of methamphetamine (actual) and that he should have been sentenced accordingly. *Id*. Rodriguez additionally alleges that McGough should have objected to his sentence as being substantively unreasonable and filed for a downward sentencing variance. *Id*. at 39-40.

McGough states that he discussed the draft PSR with Rodriguez and subsequently filed objections to 10 separate paragraphs on Rodriguez's behalf. Doc. 7 at 3. He further states that he mailed Rodriguez a copy of the final PSR and discussed the report again with Rodriguez. *Id*. McGough also notes that he discussed variance issues with Rodriguez and filed a motion for downward variance. *Id*.

The Government responds arguing that not only did McGough file objections to the PSR, contrary to Rodriguez claim, but also successfully moved for a downward

20

variance. Doc. 10 at 14. In addressing Rodriguez's argument that McGough should have objected based on changes to sentencing guidelines for cocaine offenses, the Government (correctly) responds that this objection has no merit, as this case involves methamphetamine, not cocaine. *Id*. at 13. Moreover, the Government argues that Rodriguez's proposed objection to the calculated drug weight would have been unavailing, as it ignores "the concept of relevant conduct that is the bedrock of federal sentencing" and pressing such an argument would have impacted Rodriguez's ability to obtain a reduced sentence. *Id*.

Rodriguez argues that while McGough did raise some objections, he was ineffective for failing to raise an objection based on amendments to the sentencing guidelines applicable to cocaine offenses. This argument is frivolous. Counsel's performance is not deficient for failing to pursue an argument that is legally unsupported. *See Thomas v. United States*, 951 F.2d 902, 905 (8th Cir. 1991) (per curiam); *see also Apfel*, 97 F.3d at 1077 (a defendant's claim that counsel was ineffective for failing to raise a sentencing challenge must be denied if the argument is without merit). Rodriguez was not convicted of a cocaine-related offense, as he instead pleaded guilty to conspiracy to distribute methamphetamine and was sentenced based on methamphetamine quantities. The changes to the statutory guidelines for cocaine-related offenses following the Fair Sentencing Act is utterly irrelevant to Rodriguez's case. Obviously, McGough was not deficient for failing to raise a meritless objection. Moreover, Rodriguez cannot establish he was prejudiced when the legal argument he relies on is wholly unrelated to his case.

Rodriguez also contends that McGough was ineffective for failing to object to the converted drug weight attributed to him at sentencing. Rodriguez's reliance on *Apprendi* and *Alleyne* is unavailing. Those decisions prohibit judicial fact-finding that increases the statutory minimum or maximum sentencing ranges. *See Apprendi v. New Jersey*, 530 U.S. 466, 490-91 (2000); *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Here, the converted drug weight was used solely to calculate Rodriguez's base offense level, which affects only the advisory guideline sentencing range. *See United States v. Booker*, 543

21

U.S. 220, 244-65 (2005) (the sentencing guidelines are advisory and judicial factfinding that affects only the advisory range does not violate the Sixth Amendment). The attributed drug weight did not alter the statutory penalties. Nor does the First Step Act, another statutory change cited by Rodriguez, apply, as it does not alter the statutory penalties relevant to Rodriguez's methamphetamine offense.

Additionally, as the Government correctly notes, the drug quantity was properly considered pursuant to the relevant conduct provisions under U.S.S.G § 1B1.3. Under the Sentencing Guidelines, the range is determined based on all relevant conduct in which the defendant was involved, not just the specific conduct underlying the offense of conviction. *See Witte v. United States*, 515 U.S. 389, 393 (1995). Relevant conduct includes:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
> > (i) within the scope of the jointly undertaken criminal activity,
> > (ii) in furtherance of that criminal activity, and
> > (iii) reasonably foreseeable in connection with that criminal activity;
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
> (4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3. "The base offense level for drug offenses under the Guidelines is based upon drug quantity, which may include types and quantities of drugs not specified in the count of conviction if they are relevant conduct." *United States v. Thomas*, 760

F.3d 879, 888 (8th Cir. 2014) (quoting *United States v. Ault*, 446 F.3d 821,823 (8th Cir. 2006)). The court may sentence a defendant "based upon judge-found facts and uncharged relevant conduct so long as the district court does not impose a sentence above the statutory maximum for the crime of conviction." *Id.* at 889. Factual findings made by the court need only be supported by a preponderance of the evidence. *Id.* Here, although the indictment did not charge the full quantity of methamphetamine attributed to Rodriguez at sentencing, the court was permitted to consider the additional quantities as relevant conduct. McGough was not deficient for failing to raise a meritless objection on this basis.

Even assuming McGough was deficient for not objecting to the converted drug weight, Rodriguez cannot demonstrate prejudice. As the Government notes, raising such an objection may have been futile to Rodriguez's sentencing exposure and undermined his acceptance of responsibility under U.S.S.G. § 3E1.1. Thus, not only would the objection not have succeeded, but it may also have been counterproductive. There is no reasonable probability that the outcome of sentencing would have been more favorable to Rodriguez had McGough raised the objection, and therefore Rodriguez was not prejudiced.

Additionally, Rodriguez's allegation that McGough failed to file for a downward variance or object to his sentence being substantively unreasonable is contradicted by the record. McGough filed a motion for downward variance (Crim Doc. 205), which I granted at the sentencing hearing. Moreover, Rodriguez's advisory guideline range was calculated to be 360 months to life in prison. A presumption of reasonableness applies to a sentence within the advisory guideline range. *See United States v. Adkins*, 636 F.3d 432, 434 (8th Cir. 2011). Rodriguez's sentence was considerably below the advisory range. His conclusory contention that his sentence was unreasonable does not overcome the presumption of reasonableness. Similarly, Rodriguez offers nothing more than a bare allegation that he was prejudiced by McGough's supposed errors and has therefore failed to establish prejudice.

Because Rodriguez has shown neither deficient performance nor prejudice, Subpart 2 of Claim 2 is denied.

### 3.    *Failure to File a Notice of Appeal*

Finally, Rodriguez contends that McGough was deficient in failing to file a notice of appeal.  As set out in his supplemental motion:

> The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Rodriguez v. United States*, 395 U.S. 327 (1969); *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000).  Here, after being sentenced to 176-month imprisonment, his counsel failed to file a Notice of Appeal on his behalf.  And since Rodriguez was not briefed that he could actually appeal his sentence.

Doc. 3 at 40-41.  He further asserts in his reply brief that he "wished to appeal, but his counsel failed to act."  Doc. 11 at 7.  Rodriguez maintains that he has sufficiently alleged a request to appeal was made and "[a]t a minimum the Court must hold a hearing." *Id*. at 8.

McGough states that after the sentencing hearing, Rodriguez "indicated that he was satisfied with the result and signed an Appeal Waiver."  Doc. 7 at 3.  He represents that Rodriguez never directed him to file an appeal. *Id*. at 4.

The Government responds arguing Rodriguez has failed to demonstrate that he ever directed his attorney to file an appeal.  Doc. 10 at 14-15.  It indicates that the signed appeal waiver and McGough's affidavit are enough to dismiss the claim without a hearing. *Id*.

Failure to file a notice of appeal is unique in that a movant alleging ineffective of assistance on this ground is not required to show prejudice.

> No showing of prejudice is required in this unique circumstance. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) (noting that "no inquiry into prejudice or likely success on appeal [is] necessary").  An attorney's failure to file a requested appeal amounts to the denial of

24

counsel's assistance at a critical stage of the judicial proceeding. *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984). And when a defendant is denied, either actually or constructively, such assistance, "'the adversary process itself [is] presumptively unreliable.'" *Flores–Ortega*, 528 U.S. at 483, 120 S. Ct. 1029 (alteration in original) (quoting *Cronic*, 466 U.S. at 659, 104 S. Ct. 2039). The court thus does not require an affirmative showing on the second prong of *Strickland*. Instead, prejudice is presumed. *Id.*

*Witthar v. United States*, 793 F.3d 920, 922–23 (8th Cir. 2015). Put another way:

An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required. *Watson v. United States*, 493 F.3d 960, 963–64 (8th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so. *Id.* at 964.

*United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014). "Like many of our sister circuits, we extend the presumption of prejudice even to cases in which the petitioner has waived [their] right to appeal." *Witthar*, 793 F.3d at 923 (8th Cir. 2015). Counsel who disregards defendant's instructions to file a notice of appeal "acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477 (2000). Failure to file a notice of appeal cannot be deemed as a strategic decision as "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.*

An appeal waiver can be misunderstood as eliminating all rights to challenge a conviction or sentence. *See Garza v. Idaho*, 586 U.S. 232, 238-39 (2019). While signing an appeal waiver does mean giving up most appellate rights, "no appeal waiver serves as an absolute bar to all appellate claims." *Id.* Given the broad variability in waiver language, some claims may remain viable, and even a waived claim may proceed if the Government forfeits the waiver. *Id.*

25

"When a district court receives conflicting statements – one from a § 2255 petitioner and one from [his] former counsel – the court cannot 'make a factual determination based on the relative credibility of [these individuals] without the benefit of an evidentiary hearing.'" *Witthar*, 793 F.3d at 923 (8th Cir. 2015) (quoting *Franco v. United States*, 762 F.3d 761, 765 (8th Cir. 2014)). Rodriguez asserts that he directed McGough to file a notice of appeal. McGough denies that any such request was made. This creates a material factual dispute that cannot be resolved based only on the current record.

Although the plea agreement contains an appeal waiver, it does not bar all possible appellate claims, and its existence does not negate the importance of Rodriguez's alleged request. The court need not assess the specifics or merits of the claims Rodriguez may have raised on appeal. The determinative issue is whether he did, in fact, request that McGough file a notice of appeal. Given the directly conflicting accounts and a need for a credibility determination, an evidentiary hearing is necessary to resolve this dispute. *See Winter v. United States*, No. 08-CR-04052-NKL, 2011 WL 2607111 at *3 (W.D. Mo. July 1, 2011) (although defendant's allegation that counsel failed to file an appeal lacks specificity, defendant is entitled to an evidentiary hearing on the matter unless the record conclusively shows he is entitled to no relief).

Rodriguez also suggests that McGough failed to consult with him about the possibility of an appeal. To the extent this allegation is meant to supplement, rather than contradict his primary claim – that he affirmatively requested McGough file a notice of appeal – its viability hinges on the findings made at the evidentiary hearing. "Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal ... or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480 (2000).

For these reasons, I find that an evidentiary hearing is necessary on the issue of whether McGough provided ineffective assistance of counsel by failing to file a notice of appeal. I will therefore reserve ruling on Subpart 3 of Claim 2.

## IV.    CONCLUSION

For the reasons set forth herein,

1.    Claim 1 is **denied** in its entirety and is therefore **dismissed with prejudice**.

2.    Claim 2 is **denied** as to Subparts 1 and 2, which are therefore **dismissed with prejudice**.

3.    Ruling is **reserved** on Subpart 3 of Claim 2, as I find that an evidentiary hearing is necessary as to that claim, and that claim alone. The hearing will be scheduled by separate order.

4.    The Clerk's office is **directed** to appoint Rodriguez counsel. *See* Rule 8(c) of the Rules Governing § 2255 Proceedings (directing courts to appoint counsel if the court grants an evidentiary hearing); *see also Green v. United States*, 262 F.3d 715, 717-19 (8th Cir. 2001).

**IT IS SO ORDERED** this 30th day of July, 2025.

_____
Leonard T. Strand
United States District Judge